**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| NICOLE MCGEE, | : | |
| *Individually and on behalf of all* | : | **CIVIL ACTION** |
| *those similarly situated,* | : | |
| **Plaintiffs,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| ANN'S CHOICE, INC., | : | No. 12-2664 |
| **Defendant.** | : | |

## MEMORANDUM

Schiller, J.                                                                                                                June 4, 2014

The parties have reached a settlement in this case brought under the Fair Labor Standards Act ("FLSA"), the Pennsylvania Minimum Wage Act ("PMWA"), and the Pennsylvania Wage Payment Collection Law ("WPCL"). The Court previously granted preliminary approval of their agreement. Currently before the Court is Plaintiffs' unopposed motion to grant final approval of the agreement. The Court held a fairness hearing on June 3, 2014. There are no objections to the agreement. For the following reasons, the Court will grant the motion and award attorneys' fees and costs in the amount of $15,544.43.

## I.      BACKGROUND

### A.      Factual Allegations

Nicole McGee worked for Ann's Choice as a certified nursing assistant from March 2011 through December 30, 2011. (Am. Compl. ¶¶ 14, 30.) She filed claims on behalf of herself and other certified nursing assistants working for Ann's Choice, alleging that Plaintiffs regularly worked more than forty hours a week, but were not paid for time spent outside of client's residences. (*Id.* ¶ 35.)

Ann's Choice required Plaintiffs to report to a central office, make a phone call to confirm their arrival, gather supplies, and review paperwork prior to the start of their shifts. (*Id*. ¶ 36.) Plaintiffs were not paid for this pre-shift work; rather they were paid only for time spent in a patient's residence. (*Id*. ¶¶ 37-38.) Plaintiffs were also not compensated for the post-shift time they spent delivering paperwork to the office. (*Id*. ¶¶ 39-40.) Plaintiffs spent about fifteen to twenty minutes per shift on uncompensated pre-shift activities and an additional ten to fifteen minutes per shift on uncompensated post-shift activities. (*Id*. ¶¶ 41-42.) Moreover, much of the uncompensated time was in excess of forty hours per week, but Ann's Choice failed to pay Plaintiffs overtime. (*Id*. ¶ 43.)

McGee filed a FLSA collective action for failure to pay overtime for post-shift activities, a PMWA class action for failure to pay overtime, and a WPCL class action for failure to pay employees all wages due. Plaintiffs have not moved to certify a class in the litigation. (Mem. of Law in Supp. of the Parties' Joint Mot. for Final Approval of the Collective Action Lawsuit [Final Approval Mem.] at 13.) Rather, the parties have agreed to settle the individual state law claims of the opt-in Plaintiffs. (*Id*.) The Court will therefore focus on the FLSA claim and will not address the PMWA or WPCL claims.

**B.    Settlement Agreement**

Following a settlement conference with Magistrate Judge Jacob Hart, the parties reached an agreement. To settle all claims, Ann's Choice agreed to pay $45,000. (Joint Mot. for Final Approval of the Collective Action Lawsuit Ex. A [Settlement Agreement] ¶ 2.2.) Specifically, $27,455.57 will be divided on a *pro rata* share to fifteen individual opt-in Plaintiffs, an additional $2,000 incentive award will be paid to McGee, and $15,544.43 will be paid to Swartz Swidler, LLC, representing attorneys' fees of $14,727.79 and costs of $816.64. (*Id*. ¶¶ 4.1, 5.1, 5.2.) The Settlement Agreement

2

states that Defendant "will be fully and finally released" from any claim arising prior to September 4, 2013, that "pertains to unpaid wages for performance of pre and post-shift work under federal, state or local law and seeks liquidated damages, interest, attorney's fees, or litigation expenses." (*Id*. ¶ 1.15.) The Settlement Agreement also includes a confidentiality provision that prohibits the parties and their attorneys from "seek[ing] any publicity or mak[ing] any statement to the media relative to this Settlement." (*Id*. ¶ 7.) This Court retains jurisdiction of disputes relating to the Settlement Agreement and its implementation. (*Id*. ¶ 10.1.)

## II.     DISCUSSION

### A.     Fairness of the Settlement Agreement

"When employees bring a private action for back wages under the FLSA, and present to the district court a proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982); *In re Chickie's & Pete's Wage and Hour Litig.*, Civ. A. No. 12-6820, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014). The Court must answer whether the proposed settlement "is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Lynn's Food Stores*, 679 F.2d at 1355. A proposed settlement agreement resolves a bona fide dispute if it "reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute" and is not a "mere waiver of statutory rights brought about by an employer's overreaching." *Id*. at 1354. "If there is no question that a plaintiff is entitled to the compensation they seek under the statute, then any settlement allows the employer to negotiate around those mandatory requirements, effectuating a waiver of plaintiff's rights." *Deitz v. Budget*

*Renovations and Roofing, Inc.*, Civ. A. No. 12-718, 2013 WL 2338496, at *3 (M.D. Pa. May 29, 2013).

A district court's fairness inquiry regarding a FLSA settlement is often conducted in two parts. Courts generally first consider whether the agreement is fair and reasonable to the employees, and, if so, courts consider whether the agreement furthers or impermissibly frustrates the implementation of FLSA in the workplace. *Altenbach v. The Lube Ctr., Inc.*, Civ. A. No. 08-2178, 2013 WL 74251, at *1 (M.D. Pa. Jan. 4, 2013).

To evaluate the fairness of the proposed FLSA settlement, courts have considered the nine-factor test enunciated by the Third Circuit in *Girsh v. Jepson. See, e.g.*, *Chickie's & Pete's*, 2014 WL 911718, at *2; *Brumley v. Camin Cargo Control, Inc.*, Civ. A. No. 08-1798, 2012 WL 1019337, at *4 (D.N.J. Mar. 26, 2012). The *Girsh* test directs district courts to examine: (1) the complexity, expense, and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater settlement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund in light of all the attendant risks of litigation. *Girsh v. Jepson*, 521 F.2d at 153, 157 (3d Cir. 1975).

Based on the Court's review of the Settlement Agreement, the Court concludes that the settlement is fair and reasonable. Absent a settlement, there would be substantial expense involved in finishing discovery, as well as preparing and responding to dispositive motions and preparing for trial. At trial, Plaintiffs would be required to prove that they worked the hours alleged, that they were

4

not properly compensated, and their damages. This will not be an easy task, as Ann's Choice denies liability and asserts that it has both legal and factual defenses to liability and damages. The Court accepts this representation because counsel contends that they have completed sufficient discovery to understand the strengths and weaknesses of their case and the estimated economic loses. The reaction of the class further favors settlement. Fifteen individuals opted in to the collective action. There are no objections or requests to opt out. Furthermore, the Court believes that the settlement amount is reasonable in light of the best possible recovery and in light of the risks of litigation. Based on information obtained during discovery, Plaintiffs estimate that they worked 1.25 hours of unpaid time per work week. Given hourly rates of $11-$14, Plaintiffs believe that their total unpaid overtime wages for both pre- and post-shift work is $30,397.18. However, seven of the fifteen Plaintiffs were members of a lawsuit in this District, *Holley v. Erickson Living*, Civ. A. No. 11-2444, that sought compensation pursuant to FLSA for pre-shift work. That litigation settled and thus, seven of the fifteen Plaintiffs have already been compensated for two-thirds of their original damages. Plaintiffs estimate that their unpaid damages are $19,324.30, and if they were awarded liquidated damages, their total recovery would be approximately $38,648.60. The settlement amount of $27,455.57 represents 71% of Plaintiffs' total actual and liquidated estimated damages, a figure that the Court considers fair and reasonable. Accordingly, the Court concludes that the agreement is fair and reasonable to the employees.

The Court further concludes that the Settlement Agreement does not impermissibly frustrate the implementation of FLSA in the workplace. However, there is one aspect of the Settlement Agreement that requires further discussion. The Settlement Agreement includes a confidentiality provision that reads: "**Neither Party nor their attorneys or anyone else acting on their behalf**

5

**shall seek any publicity or make any statement to the media relative to this Settlement. If any Party or counsel is contacted by any media representative, they shall decline to comment on this Lawsuit or this Settlement Agreement.**" (Settlement Agreement ¶ 7 (emphasis in original).)

Courts have rejected as unreasonable confidentiality provisions in FLSA settlement agreements; these court have reasoned that such provisions unreasonably frustrate the implementation of FLSA because they allow employers to silence employees who have vindicated a disputed FLSA right and interfere with Congress's intent to ensure widespread compliance with FLSA. *See Brumley*, 2012 WL 1019337, at *7 (collecting cases); *Altenbach*, 2013 WL 74251, at *2-3 (rejecting confidentiality provision in FLSA settlement agreement because it allowed the defendant to recover damages from a plaintiff who disclosed any information about the settlement). Here, however, the Settlement Agreement is not so restrictive that it frustrates the purpose of FLSA. The Settlement Agreement and all filings in this case are publicly available, and the terms of the confidentiality provision are narrowly drawn to prohibit only statements to the media. Importantly, the parties' agreement does not prohibit discussion of the terms of the Settlement Agreement. Plaintiffs are free to discuss the litigation with friends, family, employees, and individuals not affiliated with the media. Accordingly, this confidentiality provision is reasonable. *See In re Chickie's & Pete's*, 2014 WL 911718, at *3 (approving a confidentiality provision that "does not seek to seal the record or prohibit Plaintiffs from discussing this matter with anyone, but only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media").

### B.     Incentive Award

The approval of payment awards to named plaintiff lies within the discretion of the trial court

and may be provided as a reward for the benefit visited on the class. *In re Plastic Tableware Antitrust Litig.*, Civ. A. No. 94–3564, 1995 WL 723175, at *2 (E.D. Pa. Dec. 4, 1995). Factors that courts consider in deciding to grant incentive awards include: the risk to the plaintiff in commencing litigation, both financially and otherwise; the notoriety and/or personal difficulties encountered by the representative plaintiff; the extent of the plaintiff's personal involvement in the lawsuit in terms of discovery responsibilities and/or testimony at depositions or trial; the duration of the litigation; and the plaintiff's personal benefit (or lack thereof) purely in her capacity as a member of the class. *Id.* (*citing In re U.S. Biosci. Secur. Litig.*, 155 F.R.D. 116, 121 (E.D. Pa. 1994)); *see also Godshall v. The Franklin Mint Co.*, Civ. A. No. 01-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004).

The modest incentive award for McGee is reasonable. Class counsel states that "Named Plaintiff . . . has performed valuable services to the class in that she, in addition to initiating the instant lawsuit, answered discovery, assisted in settlement negotiations, and attended the settlement conference in person." (Final Approval Mem. at 19.) Accordingly, the $2000 incentive award to McGee is approved.

## C.    Attorneys' Fees

Under FLSA, the Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). In FLSA cases, courts have analyzed attorneys' fee requests using the lodestar method and the percentage-of-recovery method. *See Chickie's & Pete's*, 2014 WL 911718, at *4; *see also Brumley*, 2012 WL 1019337, at *9 ("Further, district courts in this Circuit have favored the percentage-of-recovery method in wage-and-hour cases such as this where a common fund is established."). The percentage-of-recovery method awards class counsel a fixed portion of the

7

settlement fund and is generally used in common fund cases. *In re Diet Drugs Prod. Liab. Litig,*, 582 F.3d 524, 540 (3d Cir. 2009). The lodestar method, normally applied in statutory fee-shifting cases, multiplies the number of hours counsel reasonably worked by a reasonable hourly rate. *See Lake v. First Nationwide Bank*, 900 F. Supp. 726, 734 (E.D. Pa. 1995). Because the parties' agreement creates a pool of money from which attorneys' fees will be awarded, the Court analyze the request for attorneys' fees using the percentage-of-recovery method.

The Third Circuit has directed courts to consider seven factors in determining the reasonableness of a fee petition when applying the percentage-of-recovery method. Those factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or the fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; and (7) the awards in similar cases. *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190,195 n.1 (3d Cir. 2000).

### 1.   The size of the fund created and the number of persons benefitted

"As a general rule, as the size of a fund increases, the appropriate percentage to be awarded to counsel decreases." *In re Cendant Corp., Derivative Action Litig.*, 232 F. Supp. 2d 327, 337 (D.N.J. 2002). This inverse relationship rests on the assumption that often the increase in the size of a recovery is due to the size of the class and not the efforts of counsel. *In re Prudential Ins. Co. Am. Sales Practice Litig.*, 148 F.3d 283, 339 (3d Cir. 1998). The size of the fund created by the Settlement Agreement is $45,000. Class counsel is requesting $14,727.79 in attorneys' fees, which represents 32.7% of the $45,000 settlement fund. The Court finds the award in this case reasonable

8

in light of the settlement fund's size and does not believe it results in an unmerited windfall for the attorneys.

            2.      *The presence or absence of substantial objections by members of the class*

As previously noted, no class members have objected to any component of the settlement in this matter, including the attorneys' fees request. "The absence of any objection weighs in favor of the fee request." *Bredbenner v. Liberty Travel, Inc.*, Civ. A. No. 09-905, 2011 WL 1344745, at *20 (D.N.J. 2011).

            3.      *The skill and efficiency of the attorneys involved*

The quality of representation in a case can be "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *In re Ikon Office Solutions, Inc., Secs. Litig.*, 194 F.R.D. 166, 194 (E.D. Pa. 2000) (quoting *In re Computron Software, Inc., Secs. Litig.*, 6 F. Supp. 2d 313, 323 (D.N.J. 1998)). The Court is convinced that counsel have used their skill and experience in FLSA actions to arrive at a fair and reasonable settlement. "Counsel has managed to speak to each putative class member to understand their individual claims, calculate the damages each individual is due, and negotiate a reasonable settlement in light of same." (Final Approval Mem. at 16.) Plaintiffs' lawyer, Justin Swidler, has appeared in over 250 cases, most of which involved employment and/or civil rights claims. (Joint Mot. for Final Approval of the Collective Action Lawsuit Ex. B [Swidler Cert.] ¶ 4.) Along with his partner, Richard Swartz, Swidler has served as lead counsel in more than fifty putative class and/or collection actions. Counsel is well-versed in FLSA cases and skilled in litigating and settling wage-and-hour litigation.

    *4..    The complexity and duration of the litigation*

"FLSA claims and wage-and-hour law enforcement through litigation has been found to be complex by the Supreme Court and lower courts." *Brumley*, 2012 WL 1019337, at *11. That the parties only settled with the help of a skilled judicial officer suggests that the legal and factual issues in this litigation are complex.

    *5.    The risk of nonpayment*

This factor allows courts to award higher attorneys' fees for riskier litigations. *See Chakejian v. Equifax Info. Servs., LLC*, 275 F.R.D. 201, 219 (E.D. Pa. 2011). Plaintiffs point out that they "would have faced a difficult obstacle in establishing liability at trial" and thus there was a risk that counsel would walk away from this litigation without compensation. (Final Approval Mem. at 17.) This factor thus slightly favors approving the amount requested by counsel.

    *6.    The amount of time devoted to the case by class counsel*

Class counsel has spent 82.6 hours on this litigation to date: Swidler spent 68.7 hours on the litigation; Swartz spent 3.7 hours on the litigation; and Daniel Horowitz worked 10.2 hours on the litigation. Although the parties reached an agreement prior to the close of discovery, this case has proceeded far enough along that the lawyers in this litigation have devoted a significant number of hours to this litigation to date.

    *7.    Awards in similar cases*

In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund. *See Bredbenner*, Civ. A. Nos. 09–905, 09–1248, 09–4587, 2011 WL 1344745, at *21 (D.N.J. Apr. 8, 2011); *Brumley*, 2012 WL 1019337, at *12 ("Counsel's request for one-third of the settlement fund falls within the range of reasonable allocations in the context of awards granted in

other, similar cases."). Class counsel's request of one-third here is well within that range.

8. *Lodestar cross-check*

"The lodestar crosscheck is intended to gauge the reasonableness of the attorneys' fee award as a whole." *Milliron v. T-Mobile, USA, Inc.*, 423 F. App'x 131, 136 (3d Cir. 2011). In performing the lodestar cross-check, the court multiplies "the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys." *In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005). The Court may then apply a multiplier to "account for the contingent nature or risk involved in a particular case and the quality of the attorneys' work." *Id*. at 305-06. If the difference between the lodestar and percentage-of-recovery "is too great, the court should reconsider its calculation under the percentage-of-recovery method." *Id*. at 306. However, because the cross-check is not the primary analysis in common fund cases, it does not require "mathematical precision [or] bean-counting." *Id*. In evaluating the hours reasonably spent on the case, the Court does not have to "review actual billing records" but can "rely on summaries submitted by the attorneys." *See id*.

According to the billing records and certifications submitted, Swidler and Swartz billed at a rate of $500 an hour, and Horowitz billed at a rate of $350 an hour. Counsel has submitted certifications from two attorneys familiar with employment law and reasonable hourly fees for employment lawyers. Those certifications assert that the rates for Swidler, Swartz, and Horowitz are reasonable given their experience, location, and area of expertise. The Court agrees that the hourly rates charged by Plaintiffs' counsel is reasonable. The amount of hours spent, 82.6, is also reasonable. Based on the records submitted, the lodestar is $39,770.00, significantly more than the

11

award that counsel is seeking. From the record before the Court, it is clear that the lodestar cross-check confirms the reasonableness of the attorneys' fee award in this case. The Court also approves as reasonable the request for costs in the amount of $816.64.


III.    **CONCLUSION**

Based upon the submissions of the parties, the Court concludes that the Settlement Agreement represents a fair and reasonable resolution of a bona fide dispute over the payment of post-shift work activities. The Court therefore approves the Settlement Agreement. The Court also approves the $2000 incentive award to McGee, as well $14,727.79 in attorneys' fees and $816.64 in costs to Swartz Swidler, LLC. An Order consistent with this Memorandum will be docketed separately.